UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| HARRY B. NARKTER, JR., | ) | No. CV 09-2606-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 17, 2009, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 1, 2009, and June 17, 2009. Pursuant to the Court's order, the parties filed a Joint Stipulation on November 7, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 5, 1972. [Administrative Record ("AR") at 98.] He has completed the eleventh grade, and has no past relevant work experience. [AR at 33, 115.]

Plaintiff protectively filed his application for Supplemental Security Income payments on August 29, 2005, alleging that he has been unable to work since August 1, 2005, due to a seizure disorder. [AR at 98-104, 105-08, 110-16, 117-20, 131.] After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 69-73, 76-80, 82.] A hearing was held on November 6, 2007, at which plaintiff appeared with counsel and testified on his own behalf. A vocational expert also testified. [AR at 35-66.] On January 25, 2008, the ALJ determined that plaintiff was not disabled. [AR at 21-34.] When the Appeals Council denied plaintiff's request for review of the hearing decision on February 20, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 1-5.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since the application date. [AR at 31.] At step two, the ALJ concluded that plaintiff has the severe impairment of a seizure disorder. [Id.] At step three, the ALJ concluded that plaintiff's impairment does not meet or equal any of the impairments in the Listing. [AR at 31.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform a full range of work at all exertional levels, with the limitations that he avoid unprotected heights, open flames, and dangerous machinery. [Id.] At step four, the ALJ concluded that plaintiff has no past relevant work. [AR at 33.] At step five, using the Medical-Vocational Rules as a framework and the vocational expert's testimony, the ALJ concluded that plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [AR at 34.] Accordingly, the ALJ found that plaintiff is not disabled. [Id.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred in failing to: (1) address the third party evidence; and (2) provide clear and convincing reasons to reject plaintiff's subjective limitations. [Joint Stipulation ("JS") at 3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

---

[1] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

4

### A. Failure to Address Third Party Evidence

Plaintiff contends that the ALJ failed to consider the third party evidence submitted by plaintiff's friend, Orlando Davis. JS at 4-10. Specifically, plaintiff alleges that the ALJ should have addressed the third party functional report regarding plaintiff completed by Mr. Davis on March 5, 2006. Id.

In the report at issue, Mr. Davis indicated among other things that he has known plaintiff for 25 years; he spends a couple of hours with plaintiff every other day; at times plaintiff "seems disoriented;" plaintiff cannot go out in public because of his condition; he is forgetful and sometimes needs to be reminded to take his medication; plaintiff sometimes "gets sick" when he starts to prepare a meal; plaintiff only goes outside to sit in the yard or go to medical appointments and is afraid to go anywhere for fear of having a seizure; he has had "a lot" of seizures; after a seizure plaintiff is confused and has a hard time comprehending anything and is disoriented; and many things can bring on a seizure. [AR at 147-54.]

Defendant contends that although the ALJ did not comment on Mr. Davis' report, the Appeals Council did so and properly rejected his statements. JS at 7-8. [See AR at 2.] The Appeals Council determined that Mr. Davis' statements did "not provide a basis for changing the Administrative Law Judge's decision," as the statements did not "contain a description of an actual seizure witnessed by [him] nor any reliable information concerning the frequency of [plaintiff's] seizures." [AR at 2.] Defendant asserts that in any event, the description provided by Mr. Davis is generally consistent with the limitations found by the ALJ. JS at 8.

As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), judges may, "in addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (2005). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); Smolen v.

Chater, 80 F.3d 1273, 1289 (9th Cir. 1996) (testimony from lay witnesses, who see the plaintiff on a daily basis and are often family members, is of noted value); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering . . . [T]his is particularly true of witnesses who view the claimant on a daily basis. . ."). An ALJ's consideration of lay testimony becomes especially important when a plaintiff alleges "that pain is a significant factor of his alleged inability to work and the allegation is not supported by objective medical evidence in the file." SSR 88-13; see Smolen, 80 F.3d at 1288. An ALJ may reject lay testimony only for specific reasons germane to each witness. See Regennitter v. Commissioner of the Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Smolen, 80 F.3d at 1289.

In cases involving seizures, special consideration must be paid to statements of those other than plaintiff when professional observation of the seizures is not available. See 20 C.F.R., Part 404, Subpart P, Appendix 1, at 11.00(A) ("Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available."). The reason provided by the Appeals Council to reject Mr. Davis' statements is that they lack detail concerning the seizures. When viewed in context, however, a detailed description of the actual seizures referenced in this section is necessary in order to meet the Listing at 11.00(A) ("degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures. At least one detailed description of a typical seizure is required."). While Mr. Davis' statements may not assist in making such a Listing determination, the Council's rejection fails to address how those same statements may inform the ALJ concerning plaintiff's *limitations* as a result of his seizures. Given the "essential" nature of this type of third party statement in cases involving seizures, the reason provided here by the Appeals Council is neither specific nor germane to this particular witness as his observations relate to plaintiff's ability to work. The ALJ erred in failing to even *mention* Mr. Davis' third-party statement, let alone provide reasons germane to him for disregarding it. The limitations addressed by plaintiff's friend, if credited by the ALJ, could certainly have a substantial impact on the determination of disability. On remand, the ALJ must explicitly consider Mr. Davis' statement concerning plaintiff's limitations.

**B.     Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ failed to make proper credibility findings concerning plaintiff's testimony. [JS at 10-14, 20.] Specifically, plaintiff argues that the ALJ did not provide clear and convincing reasons for discounting his subjective complaints and limitations related to his seizures. The Court disagrees.

Whenever an ALJ discredits a claimant's testimony regarding subjective symptoms, including degree of pain and functional limitations, the ALJ must make explicit credibility findings. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it). The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "It is not sufficient for the ALJ to make only general findings." Dodrill, 12 F.3d at 918. Absent evidence showing that a plaintiff is malingering, the ALJ must clearly identify evidence in the record undermining the plaintiff's testimony to properly discredit his alleged limitations. See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As the record contains no evidence of malingering by plaintiff,[2] the ALJ was required to justify her credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. In the decision, despite finding that plaintiff's medical condition would reasonably produce the alleged symptoms, the ALJ found plaintiff's statements "concerning the intensity, persistence and limiting effects" of his symptoms to be "not entirely credible." [AR at 32.] The ALJ discounted plaintiff's subjective complaints of the limiting effects from his impairment because: (1) the subjective complaints and limitations are "out of proportion" to the objective clinical findings and observed functional restrictions; (2) the subjective complaints and limitations are not consistent with the treatment he received; and (3) plaintiff provided inconsistent information about his seizures. [AR at 32-33.] As discussed below, the Court finds that the ALJ has provided clear and convincing reasons for discounting plaintiff's subjective testimony.

In describing his physical problems that make him unable to work, plaintiff testified about how he suffers from seizures that make him afraid to go anywhere for fear of passing out; he has not left his house in the last 18 months; he takes medication for the seizures but still experiences seizures a couple of times each week; he doesn't recall having the seizures but will just wake up on the floor, following which he has to lie down and sleep to recover; transportation for medical treatment is a problem, as he cannot take the bus (it triggers a seizure), and he ends up missing a lot of appointments; he has had various tests to determine the cause of his seizures; he could be fine while sitting at a desk. [AR at 38-66.]

The record shows that as of June 23, 2005, plaintiff reported to medical professionals that he was suffering from daily seizures despite taking medication [AR at 197]; the medication was increased, but two months later he indicated the increase "hasn't helped" and diagnostic tests were ordered [AR at 196][3]; by the end of 2005, he reported having 15 seizures during the previous four months; his medication was again increased [AR at 223]; as of February, 2006, he had not

---

[2] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

[3] EEGs in both the awake and sleep states were normal [AR at 193-94]; a CT scan of the brain produced negative results [AR at 224.]

8

increased his medication as recommended, even though he was tolerating the prescribed medication. [AR at 222.] On November 28, 2005, Dr. Sarah L. Maze, a Board eligible neurologist, conducted a neurological assessment of plaintiff, and concluded that he has a seizure disorder, appears compliant with his medications, has no physical limitations, but is precluded from working at heights, around dangerous machinery or operating a motor vehicle. [AR at 198-201.]

In rejecting plaintiff's alleged limitations, the ALJ cited various inconsistencies between plaintiff's testimony and prior statements (or lack thereof) to medical providers, and lack of support in the record for his allegations. [AR at 32-33.] Among other instances, she determined that the record does not reveal regular follow up treatment and medication refills or blood studies relevant to medication adjustments. The ALJ noted that despite saying he was not able to obtain treatment as he had "no medical" and gets "turned down" at hospitals in his area, plaintiff has had access to treatment through County clinics, is aware of such facilities, and demonstrated an ability to access medical care, which has included a range of testing. [AR at 32, 45, 51, 187-95, 224, 256.] The ALJ also cited evidence that plaintiff does not regularly attend treatment and has missed various appointments [AR at 33, 174, 257, 259], and that he was told to increase his medications but failed to do so. [AR at 27, 222.] Next, there is no evidence that he is unable to travel on public transportation as he claims, and he has not mentioned this excuse to any doctor [AR at 32]; and he provided inconsistent information about his seizures, informing one doctor that the seizures are triggered by television [AR at 223], but testifying that he spends "almost all the time" watching television and movies or reading on the computer. [AR at 51.] Finally, despite indicating that he has been homebound since August 2005 as a result of his condition, he worked for a time in 2006 at a job that involved walking door to door and standing in public, and he does not show any evidence of severe disuse muscle atrophy that would be expected if that were the case. [AR at 32-33, 39, 47.] These reasons as cited by the ALJ are supported by the record.

These inconsistencies, the noted noncompliance with medical treatment, and the lack of support in the record for plaintiff's allegations are all valid reasons to reject plaintiff's credibility. See Thomas, 278 F.3d at 958-59 (inconsistencies); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (failure to seek treatment or noncompliance with prescribed course of treatment are

1  relevant considerations in assessing credibility); Luna v. Bowen, 834 F.2d 161, 165 (10th Cir.
2  1987) ("The absence of an objective medical basis which supports the degree of severity of
3  subjective complaints alleged is just one factor to be considered in evaluating the credibility of the
4  testimony and complaints.") (quoting Polaski v. Heckler, 751 F.2d 943, 948 (8th Cir. 1984),
5  vacated and remanded on other grounds, 476 U.S. 1167 (1986)).
6      To properly reject a plaintiff's alleged limitations, the ALJ must provide reasoning
7  "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily
8  discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ
9  did so here, and her credibility determination is entitled to great deference by this Court, as the
10 Court's "role is not to second-guess that decision."  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.
11 1989); see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).
12 Remand is not warranted for this claim.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

16     As a general rule, remand is warranted where additional administrative proceedings could
17 remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th
18 Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir.
19 1984).  In this case, remand is appropriate for the ALJ to consider Mr. Davis' third-party
20 statements.  The ALJ is instructed to take whatever further action is deemed appropriate and
21 consistent with this decision.
22 /
23 /
24 /
25 /
26 /
27 /
28 /

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: February 11, 2010

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE